Case number 15-3376, Stephen Salyers v. Brennan Builders, Inc. at Awe, Oro Garden, Natchez C, 15 minutes per side. Mr. Torchia for the appellate. Good morning. I've indicated I'd like to reserve three minutes for rebuttal, please. May it please the court, my name is David Torchia. I'm here on behalf of the appellant, Steve Salyers. As the court knows, we're here because the district court granted some re-judgment to the defendants on all of the claims in the complaint. It's our view that there were disputed issues of fact with respect to nearly every element of every claim that we raised that should have been presented to the jury. For that reason, we are here seeking the court's reversal and remand of the decision of the district court. This case, I believe, is largely about the proper application of the summary judgment standard. The rules on summary judgment are well settled. Facts are supposed to be viewed in a light most favorable to the plaintiff. Credibility disputes are not supposed to be made by the court. Every inference is to be drawn in favor of the plaintiff. And it's our view that time and time again, the district court, particularly the magistrate judge, didn't properly apply those principles to this case. For example, the magistrate judge placed a great deal of importance on a letter that Terry Brennan sent the plaintiff in February of 2006. The magistrate judge overlooked and didn't say anything about Mr. Salyer's response to that letter. The letter said you will have a six-month period of trial employment. The magistrate said that's the only writing demonstrating any agreement in this case. Well, there's testimony in the record from Mr. Salyer's that after he received that letter, he called Terry Brennan, spoke with Mr. Brennan, and asked if that changed anything about the agreement they had reached a couple weeks before in person when they met. Mr. Brennan said absolutely not. This is the way I need to do it. I just need six months to get the transition document together. The magistrate didn't say anything in her opinion about that testimony, which is very important and which certainly clarifies or at least creates some questions about whether or not this February 2006 letter was the entire agreement between the parties. But the letter also said after six months we will discuss other options, right? Correct. Well, doesn't that show sort of a lack of agreement of what those other options would be? Judge, they had already agreed before that letter was written that this was going to be a transition of ownership that Mr. Brennan needed six months to put the documents together and that that's what this trial period was for. And what were the terms of this transition? The transition, Judge, the terms were that Terry Brennan was going to transition Brennan Builders to Mr. Salyer's over a two-year period, but that for the first six months, the first step of the transition would be a six-month trial period to give Mr. Brennan time to get these papers. But what were the terms of the transition? The terms of the transition were that they would occur over a two-year period. Well, but, I mean, at what price or, you know, what kind of ownership or what was your client going to pay for this? There was no price, Judge. This is, and it's important to understand the background and the context of the relationship between Mr. Brennan and Mr. Salyer's. These two had met in April of 1998. Mr. Salyer's and Mr. Brennan worked together on a project. Mr. Brennan was very impressed with Mr. Salyer's work. When the project ended, they had a discussion about coming to work for Mr. Brennan. Over the years, they stayed in touch. They became close friends. Steve Salyer has described the relationship as that Mr. Brennan was like a mentor to him. Was there any documentation in any of the communications about a payment for the business that it was either zero, as you're seemingly suggesting, or that a certain amount would be the payment for the business? Judge, there was never a discussion about payment until four years after the agreement was reached in January of 2006. So what does that mean the agreement was then? The agreement was that Mr. Salyer's, at Mr. Brennan's request, this was all Mr. Brennan's idea because Mr. Brennan didn't have anybody to turn the business over to because he couldn't sell the business, because he wanted to be fair to his customers, because he was ready to retire, because he had enough money. These are all things that were said leading up to this January of 2006 meeting, and they had been said many times. When Mr. Salyer's and Mr. Brennan got together in early 2006, this discussion had played out many times over the years. There was not discussion about a payment because Mr. Brennan was going to transition the business to Mr. Salyer's gradually so that Mr. Salyer's could show that he could do the work, develop the relationships, continue the relationships with Mr. Brennan's customers. And for that, within the two-year period, Mr. Brennan was going to transition this business to Mr. Salyer's. Is that enough, though? I see in February of 2007 your client writes himself a private note that's at page 526 of the record, and part of it says that aside from entering into any agreement until the LLC is drafted, that I have no idea what the terms or amounts are going to be. This is what your client is saying to himself. So how are we supposed to define what the terms or amounts are going to be if your own client doesn't know? Yes, that letter was written a year after the agreement that's at issue in this case was reached. In early 2006 is when Mr. Brennan and Mr. Salyer met and came to this agreement. In February of 2007, by that point in time, Mr. Brennan hadn't followed through with what he said he was going to do. When you keep using the word said, what is the agreement? Is there a document? You started out in your argument this February 06 letter by Brennan. Is that the agreement? Oh, no, Judge, absolutely not. So what is the agreement? The agreement was a verbal agreement that was reached in early 2006 between Mr. Brennan and Mr. Salyer's that Mr. Brennan would transition Brennan Builders to Mr. Salyer's over a two-year period and that the specific details, the fine details of the transaction would come within six months when Mr. Brennan was going to present the document to Mr. Salyer's. Six months came and went and there was no document. Mr. Salyer's went to Mr. Brennan and said, where's the document? Mr. Brennan didn't say, I don't know what you're talking about, Steve. There's got to be some misunderstanding here. He said, sorry, I need a little additional time. I'll have it to you in two months. Are you familiar with this Ohio Court of Appeals case called Reif v. Wagenbrenner? No, it's in the plea to end the breach. Yeah, I mean, it's a 2011 decision by the Ohio Court of Appeals and it seems like a very similar case of an employer's alleged oral promise to give the employee an ownership interest and they held it wasn't sufficient to form a binding contract because it was vague, it lacked any definite time frame in which the transfer and it did not include any monetary payment amount. How do you distinguish that case? Judge, we have, in this case, we have a definite time frame. It's within two years. That's definite enough. There was no discussion about a monetary payment because that's not what Mr. Brennan ever asked for. The offer from Mr. Brennan was, I need you to take over my business. I will transition it to you. You imply from that he was going to do it for free? Well, not for free, Judge. Mr. Brennan got a big benefit out of Mr. Salyers coming in to work for him. Well, he also paid him the salary. He paid him. He paid him. But Mr. Salyers came to Cincinnati and took this job based on the representation that he would become an owner of this company. What's your strongest case that you think is directly comparable that would sustain your position here? Judge, there's not a case directly with the facts very similar to this. The strongest case, I believe, from this court is Arno Palmer v. Fuqua, which says that it's up to a finder of fact to determine from all the facts and circumstances whether a contract was intended. And then beyond that, the general contract principles are their jury questions about whether an offer was made, whether it was accepted, whether it was consideration, and whether it was breached. I think all these questions are for a jury to decide. Hearing the testimony from Mr. Salyers about his relationship with Mr. Brennan, all the events and discussions that led up to this, why it was reasonable for Mr. Salyers to trust Mr. Brennan and accept what he's saying, Mr. Salyers was not taking over IBM or P&G. This was a very small business. It was successful, but it had very few employees. It didn't have a ton of assets. It had a truck, a couple trucks. It had some computers and equipment. This business was contracting. Mr. Brennan didn't have a lot of equipment. I don't know that he had any equipment. All of his work was subcontracted out. So there wasn't a big asset to buy. It was, as Mr. Brennan said to Mr. Salyers many times, I don't have anything to sell. I have relationships. That's the value of my business. And that's what Mr. Brennan was turning over to Mr. Salyers. Another example of the court's misapplication of the summary judgment principles is the fact that there are documents, Judge, you mentioned one, but there are four or five documents in the record where Mr. Salyers is going to Mr. Brennan, saying we have this deal. I want to get this agreement in place. If you don't want to be my partner, say so. And not once, not a single time over four years did Mr. Brennan ever say, Mr. Salyers, I don't know what you're talking about. Not once did he ever deny in writing, in the face of these four or five pieces of communication from Mr. Salyers, Brennan never said we've got to talk. There's a misunderstanding. I don't know what you're thinking. I don't know what you're talking about. But clearly we're not on the same page. That never happened. Isn't this more like an agreement to negotiate an agreement in the future? And then you get into the issue of whether there's binding and there's sufficient consideration for any such agreement. But it's more like an informal understanding to negotiate an agreement rather than an actual agreement. Would that be a better or more accurate way to describe it? I would say that it's close. There was a discussion where the essential terms of the agreement were reached in early 2006. The fine details. What were the essential terms? Other than that they would transfer ownership. That's sort of nebulous just to state that only. But what really were the terms if an agreement was reached? Those were the terms were the transfer of ownership within the two-year period. Mr. Brennan would have a transition document put together. That's not an agreement because there's no indication of what would be paid for that to make that binding or what the purchase price would be. So there are not enough terms there to make it binding, are there? Again, this is not a payment. This is not a purchase of the business. This is a transfer. And everybody can say, why would Mr. Brennan do this? What were his motives? But this is what Mr. Brennan offered Mr. Salyers. In other words, when you say it's not a purchase, you mean it's an agreement to give the business as a gift basically since there's no purchase. I have a problem with gift because Mr. Salyers worked for the company, earned the right to become the owner of the company, demonstrated that he was the person to take over the company. It was a transfer. There's consideration. He gave, Mr. Salyers gave Mr. Brennan exactly what he asked for, which was to come and work for him for six months, take over the business, give Mr. Brennan time to get the document in order to do that. Your red light is on. Thank you. If we have time for rebuttal, that would be fine. Good morning, and may it please the Court. My name is Curtis Cornett. I'm from the law firm of Coors and Bassett, and I'm the attorney for the Appalese Brennan Builders and Mr. Terry Brennan. And this Court has obviously identified some of the problems with the appellant's case here, particularly with the breach of contract case. I think the district court got it right in a lot of ways, and this is kind of a grievance looking for a cause of action, right, from the way the complaint was drafted all the way through Mr. Torchia's argument today. It's a breach of contract. Maybe it's expressed, but we can't really point to a writing. In the complaint, there's also mention of an implied contract. Maybe there was some implicit agreement between the parties, but it's really hard to nail that down when that happened. If it wasn't a contract, maybe it was a quasi-contract. Maybe there's some promissory stopple going on here, and if it's not that, maybe it's something really more heinous. Maybe it's a fraud claim, actually. So, I mean, this is just a disappointed former employee that's looking for some cause of action that doesn't fit. And there wasn't, let me hasten to add, there wasn't any type of misapplication of Rule 56 here. The district court below construed every single fact in Mr. Salyer's favor below. There was no weighing of facts here, and this Court, as I said in my paperwork, they don't have to weigh any facts and make any credibility determinations to affirm what the district court did below. Assume that the district court would have expressly wrote in her opinion that, yes, Mr. Salyer's, at some point before he started, called Terry Brennan, and Mr. Brennan said, yeah, nothing has changed, Steve. What was the nothing has changed? And this Court's already identified it. What was this transition going to look like? Was Mr. Brennan going to be involved in the business after the transition? Was it going to be a stock sale? Was it going to be an asset sale? What was the name? Was Mr. Salyer going to get to keep the Brennan builder's name? Why was all of that important if the essence of the agreement is that there's going to be a transfer free, except for the fact that Salyer has been working as an employee, has moved to Ohio to work? Assuming that that's what the contract was, why do you need all of that little bit of information? Because those are the essential terms. Because Ohio law says that the essential terms of the contract have to be known. They have to be ascertainable. A court can't create a contract for the parties. And those aren't just details. Those are essential terms. How is a transfer going to take place?  And, in fact, we know that the parties had different views about that because they actually did exchange letters of intent in 2010. And Mr. Salyer's letter of intent said that Mr. Brennan was going to stay on as a contractor. He'd get to keep the Brennan builder's name. And, oh, by the way, he's going to pay for the company. He's going to pay from post-transaction revenues, a bit unusual for a transaction. But, nonetheless, he was going to pay something for that. When I asked Mr. Salyer at his deposition if he already had an agreement he was going to give you the company, why would your first offer to him in writing be that you were going to pay him? He had no explanation for that, none. There was a counteroffer by Mr. Brennan in writing. It wasn't complicated, but it was in writing, a page and a half. Mr. Brennan was not going to remain involved in the business. The cost would be $1.4 million up front for Mr. Salyer to purchase the business, and he wouldn't be allowed to use the Brennan builder's name. Neither party had any idea how this transition was going to work four years earlier. But that's the, quote, agreement that Mr. Salyer wants his court to enforce. It's impossible to enforce because the essential terms aren't there, and that's why it's important. And I think Judge Clay had it right. Giving every benefit of the doubt to the plaintiff. If there were discussions, which, by the way, as we said in our paperwork, and you don't have to resolve these, but they're all hotly disputed by Mr. Brennan. And, by the way, when he said he never told Mr. Salyer, what are you talking about? The record doesn't say that. He didn't put it in writing, but Mr. Brennan testified that he went to Steve, Mr. Salyer, every time he got an e-mail from Mr. Salyer, and he said, what are you talking about? You know, if this business is transferred, it's going to be transferred on my terms, on my timetable, not yours. And, in fact, Ms. It sounds like you're telling us to look at the facts from the light most favorable to your client. No, I'm just saying that the record contains information. You don't have to resolve it. Let's assume that Mr. Brennan never denied what Mr. Salyer was saying. What was the agreement between the parties? I want you to assume that Mr. Brennan never denied it, in orally or in writing. What were the terms of the contract? Even assuming everything in Mr. Salyer's favor, there's no essential terms. I'm trying to ask you a question. Sure, I'm sorry. Your opponent has said that the terms were that Brennan was going to give the business to his client, Salyer's, and he doesn't want to use the word give because he's calling this a contract. But why isn't that a very simple contract? I will give you the business in exchange for your coming to work for me for six months and learning the business because I've known you for years and I think of you as a son. In addition to what I said earlier, Judge Moore, about that's still not enough terms, right? I'm going to give you the business. What's the business going to be called? You have to have the name for the business in a contract in order for it to be a contract. That is not the law of Ohio or whatever state this is. This is Ohio, yeah. I do believe some of the essential terms, such as whether or not the former owner is going to stay involved for how long, when's the transition going to occur, sometime over the next year and a half or two years, that's pretty vague too, which Ohio courts have said there's got to be a definite time where the contract is supposed to take place in. But also the other essential element as a matter of law for a contract, consideration. What's the consideration here for the gift? Is it donative intent? The opponent has argued that the consideration is his coming to Ohio to work for six months. Why would that not be enough? Because Mr. Salyer's was indisputably unemployed at the time. He didn't give up anything. There was no detriment to move. He had to move from another state, which he might have preferred to live in, Ohio. I'm just not aware of any case law that suggests that that is sufficient consideration for the gift of a successful multimillion-dollar business to a plaintiff. I'm just not aware that those facts in and of themselves can consist of. What's your best case you think that supports your position, that the essential terms are missing here? The Reif case is right on board, which we cited. It's right on board. All of those cases that we cited involving the transfer of a business and why there has to be a writing with the essential terms, all of the cases that we cited, the Crown car case, all of those in our paperwork before this court lay out in Ohio what the terms have to be when you're talking about a business transaction. They also talk about, by the way, what reasonable reliance is in this context with respect to a quasi-contract. And even in that, Mr. Torchia says in the Arnold Palmer case decided by this court, there was a six-page letter of intent in that case, a six-page letter of intent, that the court was scrutinizing to determine whether or not there was actually an agreement between the parties. And the court said, you know what, we can't tell. It's pretty detailed. There are some items that are left out. And so there's some detail that needs to be. But on the other hand, maybe a jury could determine that this is an enforceable contract. Ironically, even in this case, even when Mr. Sires gives the letter of intent in 2010 to Mr. Brennan, what's that letter of intent say? This is not a binding contract. There's going to be something that fills in all the essential terms later. And that was four years later. Even Mr. Sires' attorney realized that a letter of intent is probably not legally enforceable. And now Mr. Sires wants his court to enforce something even much more remote than that, much more vague than that, that doesn't have any of the terms in writing and any of the terms about how the business is to proceed or when the business is going to actually transfer over, what it's going to be called, what's going to happen with all the assets of the business. That's another item. Is it going to be ownership in the sense that here's all the stock, Mr. Sires, run the business? Or is it going to be here are all the assets, Mr. Sires, you run the business? Or is Mr. Brennan saying you can have the stock, but I'm going to take all the assets with me? We don't know because the record is absolutely bereft of that evidence. Does the record have any evidence that there was stock or that there were assets? Yes. That Terry Brennan was 100 percent shareholder of Brennan Builders and that yes, that he went to his offices every day and that there was desks and chairs and computers and backhoes and yes, the record absolutely has that evidence, Your Honor. Well, you know, at the very least, I suppose, assuming the facts, construing the facts in favor of Mr. Sires, your client led him on to believe that there would be a transition of ownership. Which we have to because this is a summary judgment. If you look at Mr. Sires' version, at most what the court can glean from the disputed record is that yes, there was discussion about well, heck, even Mr. Brennan acknowledges that in 2009 that he sent a credit application from Mr. Sires to his banker to see if he was financially credible enough to maybe operate an LLC. Earlier than that, he stuck his head in Sires' office and said, oh, you don't know this, but I'm already on draft number four. Right. And if, in fact, draft number four or draft number one had ever been presented to Mr. Sires, we'd be dealing with a different case here because then there would be some terms that the court could enforce or not enforce. But you don't think it's enough just that he's leading him on, look, keep working for me because I am going to propose something that will transfer the business to you. I think maybe, Judge Gilman, you're getting into the promissory estoppel claim, maybe should. Is there enough evidence to suggest that Mr. Sires was entitled to rely on these alleged promises? And, again, for all the reasons we set forth in our paperwork, the answer as a matter of law is no. The reliance was as a matter of law unreasonable, that in a business transaction such as what was being discussed here, that it is unreasonable as a matter of law under Ohio law to rely on oral representations, oral assurances when both parties understand that a writing has to come later that define the terms of the business transaction. And so that's exactly what Mr. Sires did here, if you believe Mr. Sires. And that is there were oral statements made about I'm going to transfer you the business, just hang on, Mr. Sires, keep working for me, even though I'm paying you a handsome salary, but keep working for me because I'm going to transfer you that business. But every party knew, both parties knew there was going to be a writing. In fact, that's what Mr. Sires was waiting on. Terry, give me a writing. It never developed. And Ohio law says it's unreasonable as a matter of law to rely on those oral representations when you know there's got to be a writing that's going to set forth the terms of that business transaction. The best case that you have for that principle is? I'm sorry, Your Honor. They're cited on pages 46 through 48 of our primary brief before this court. And they include Interstate Gas Supply v. Kalex, Hines & Associates v. Diamond Cellar, Mansfield Square v. Big Lots, Hines & Associates again, and Carcorp Inc. v. Chess Round Oldsmobile. That was the one I was referring to earlier. That, again, when reliance on a statement, this is the quote from all four of those cases, reliance on a statement of future intent made prior to the conclusion of negotiations in a business transaction is unreasonable as a matter of law. And so those are the cases that Apple would be relying on. And, again, Mr. Brennan will concede that, yeah, this wasn't P&G, this wasn't Apple Computers, this was a successful yet pretty small business. But both parties understood when they wanted to exchange offers, they knew how to do so. They put it in writing. In fact, Mr. Brennan's letter of intent was only a page and a half. So it wasn't complicated. It wasn't complex. But it set forth the terms under which he was willing to let go of his company, when he was going to let go of his company, and what particular assets he was willing to have Mr. Sires have. And Mr. Sires' letter of intent also wasn't all that complex. It was a little bit longer, but it was still, I think, five or six pages. So we agree. If the parties had wanted to create some type of enforceable contract, it wouldn't have taken a lot. And we have evidence that they tried to do that near the end of their tenure, but, in fact, neither side accepted the other side's offer. So if there's going to be a contract that's enforced here, I respectfully submit it would have to be created by this court because the parties did not create the essential terms of a contract to be enforced by this court. I've talked a little bit about the reasonableness and the lack thereof of reliance by Mr. Sires. Again, remember also that at the very beginning of his employment, Mr. Brennan wrote him a letter, didn't say anything about ownership. And then Mr. Sires has the opportunity to confirm what the deal is going to be between the parties. Mr. Sires doesn't say anything about ownership. And I understand there was allegedly some type of phone call in between, but if you're the plaintiff and that's where and this goes to the reliance as far as a fraud claim goes and as the case we cited in our opinion says, you know, as a business person, you have to take some responsibility for your own, right? You have to look out for yourself. So if I'm on the phone with somebody that's promised me to give me their business and I have the opportunity to confirm that in writing, which Mr. Sires did, to fail to do that, to just omit that important term, which Mr. Sires said was the opportunity of a lifetime, that's just negligence. That's reckless. That's how I characterize it in my brief, and I believe it is reckless. Mr. Sires did nothing to protect himself here, even assuming everything he said in his deposition was true. So again, there is no need to weigh facts here. There's no need to weigh credibility here. The law of Ohio is clear that under whatever scenario, whatever cause of action Mr. Sires tries to proceed under, he does not have a cause of action. Your red light is on. Okay, thank you for your time. I want to start with Mr. Cornett's argument about the letter of intent in June of 2006 that Mr. Sires wrote. Please keep in mind that that's four years after the agreement that was reached and breached. In early 2006, the agreement that is at issue in this case came about. Between then and June of 2010, Mr. Sires was repeatedly after Mr. Brennan to do what he said he was going to do. When Mr. Sires got a lawyer and the lawyer contacted Mr. Brennan's lawyer, for the first time the lies were exposed. Mr. Brennan had repeatedly said, we're working on the agreement. My lawyers are working on it. In 2010, Mr. Sires learns there is no agreement, and there never was. There was never a fourth draft. I mean, in 2006 on this employment agreement, which was the only writing, right, that they actually agreed on was your client's initial six-month trial period employment. That was a written contract. Well, it's only writing relating to that term. Well, but it also has a provision in it that though it says that, what, no representatives of the company shall have any authority to enter into any agreement for employment or to make any agreement contrary to the foregoing unless it's in writing and signed. That's the employment application. Well, what about this or make any agreement? The agreement had already been made before Mr. Sires signed it. That was signed in March of 2006. The agreement at issue here for the ownership had been made earlier than that in January or February when Mr. Sires and Mr. Brennan met in person. That agreement was already in place. That's the oral when you're talking. The oral ownership agreement. What that refers to is an employment, it says no specific employment contract. Well, it says to enter into any agreement for employment for any specified period of time, comma, or to make any agreement contrary to the foregoing unless in writing and signed. Right. But, again, that's after the agreement had already been reached. The oral agreement had been reached in February, and it's a different subject matter. This, you know, the implied contract arises from all the surrounding facts and circumstances, and the letter in February of 2006 is not a contract with an integration clause. It doesn't say this supersedes everything. It was, as Mr. Sires clarified before he came to work with Mr. Brennan, the first step, one part of an overall transition of ownership. So I think part of where the district court, the magistrate judge erred, was to place so much emphasis on that letter to the exclusion of all the other facts and circumstances, the conduct of the parties, everything that happened in this case until September of 2010 when Mr. Brennan finally said in writing, I deny, I deny, everything leading up to that. The conduct of the parties was to do what they agreed to do. Brennan constantly said, I'm working on the agreement. I've got the fourth draft. My lawyer is working on it. The conduct of the parties is that they're doing the agreement, and one final point is that, well, Mr. Cornett can talk about all these little details that never took place. The fact is, and a jury could find, that if Mr. Brennan simply did what he said he was going to do, put this letter of intent, put everything in writing within the first six months, it could have been done very simply. Thank you, Your Honor. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case?